UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRETT LYON, | No. 2:19-cv-00371-KJM-KJN |
| Plaintiff, | |
| v. | ORDER |
| NEUSTAR, INC., | |
| Defendants. | |

On March 13, 2019, the court issued a temporary restraining order ("TRO") enjoining defendant Neustar, Inc. from further litigating its arbitration action filed against Barrett Lyon in the Eastern District of Virginia, or initiating a new arbitration action against Mr. Lyon. TRO at 3, ECF No. 13. The court also ordered Neustar to show cause why a preliminary injunction should not issue enjoining the same actions restrained by the TRO. *Id.* Neustar filed a response to the order to show cause, Resp., ECF No. 23, and Lyon replied, Reply, ECF No. 24. On April 16, 2019, the court held a preliminary injunction hearing. Counsel Brett Schuman and Jeremy Lateiner appeared on behalf of Lyon; counsel Ulrico Rosales and Aleksandr Katsnelson appeared for Neustar. The court submitted the matter following hearing, and on April 26, 2019 granted the preliminary injunction in the form of a minute order. ECF No. 29. This order provides the reasons for the court's grant of the injunction, preliminarily enjoining defendant Neustar from further pursuing litigation or arbitration against Lyon outside of California based on alleged violations of the employment and termination agreements.

1

# I. BACKGROUND

From December 29, 2016 until June 28, 2018, Lyon, a resident of Truckee, California, was employed by Neustar, a provider of web security services, as Neustar's Vice President of Research and Development, Securities Solutions. Compl. ¶¶ 1–2, ECF No. 1. During this period, Lyon worked for Neustar from his home in California. *Id.* ¶ 1. Neustar is a Delaware corporation with its principal place of business in Sterling, Virginia. *Id.* ¶ 2.

At the inception of his employment, Lyon and Neustar entered into an agreement titled Employee Proprietary Information, Inventions, Noncompetition, Nonsolicitation Agreement and Image License (the "employment agreement"), which set the terms of Lyon's employment and imposed several restrictions. *Id.* ¶ 7. As pertinent here, the restrictive terms of the employment agreement provide as follows:

> 15. a. I agree that during my employment with Neustar, and for a period of twelve (12) months thereafter, I will not, directly or indirectly, on behalf of myself or any other person, company or entity, solicit or participate in soliciting products or services competitive with or similar to products or services offered by, developed by, designed by or distributed by Neustar to any person, company or entity which was a customer or potential customer of Neustar for such products or services and with which I had direct contact or about which I learned confidential information related to such products or services at any time during the twenty-four (24) months preceding the termination of my employment with Neustar.
>
> b. I agree that during my employment with Neustar, and for a period of twelve (12) months thereafter, I will not, directly or indirectly, on behalf of myself or any other person, company or entity, offer, provide or sell or participate in offering, providing or selling, products or services competitive with or similar to products or services offered by, developed by, designed by or distributed by Neustar to any person, company or entity which was a customer or potential customer of Neustar for such products or services and with which I had direct contact regarding such products or services at any time during the twenty-four (24) months preceding the termination of my employment with Neustar.
>
> c. I agree that during my employment or relationship with Neustar, and for a period of twelve (12) months thereafter, I will not directly or indirectly, on behalf of myself or in conjunction with any other person, company or entity, own (other than less than 5% ownership in a publicly traded company), manage, operate, or participate in the ownership, management, operation, or control of, or be employed by any entity which is in competition with Neustar, with which I would hold a position with responsibilities similar to any position I held with Neustar during the twenty-four (24) months preceding the

> termination of my employment with Neustar or in which I would have responsibility for and access to confidential information similar or relevant to that which I had access to during the twenty-four (24) months preceding the termination of my employment with Neustar in any geographic territory over which I had responsibilities during the twenty-four (24) months preceding the termination of my employment with Neustar. Notwithstanding the foregoing, in the event that Neustar eliminates my position or terminates me in connection with a reduction in force, Neustar will pay me severance in accordance with its then-effective severance policy. The length of the non-compete period will be reduced from 12 months to be the same length of time that my severance payment covers.
>
> d. I agree that during my employment with Neustar and for a period of twelve (12) months thereafter, I will not, nor will I assist any third party to, directly or indirectly (i) raid, hire, solicit, or attempt to persuade any employee of Neustar or any person who was an employee of Neustar during the 6 months preceding the termination of my employment or with Neustar, who possesses or had access to confidential information of Neustar, to leave the employ of or terminate a relationship with Neustar; (ii) interfere with the performance by any such persons of their duties for Neustar; or (iii) communicate with any such persons for the purposes described in items (i) and (ii) in this paragraph. [ . . . ]
>
> g. I agree that during my employment with Neustar, and for a period of twelve (12) months thereafter, I will not, directly or indirectly, become employed or engaged by or affiliated with any person, company or entity in which I would hold a research or development position for products or services similar to or competitive with products or services for which I was responsible for research or development at Neustar during the thirty-six (36) months preceding the termination of my employment with Neustar.

*Id.*; Emp't Agreement ¶ 15, ECF No. 5-5, Ex. B. The agreement also contains the following hybrid choice-of-law and forum-selection clause:

> 22. I consent to the law of Virginia being exclusively applied to any matter arising out of this Agreement, without regard to its conflict of law principles and exclusively to personal and subject matter jurisdiction in the state and federal courts of California for any dispute relating to this Agreement or my relationship with Neustar. Should Neustar successfully enforce any portion of this Agreement before a trier of fact, Neustar shall be entitled to all of its reasonable attorney's fees and costs incurred as a result of enforcing this Agreement against me.

Compl. ¶ 8; Emp't Agreement ¶ 22.

On June 14, 2018, Neustar informed Lyon his employment was being terminated. TRO Mot. at 3, ECF No. 5-1; Lyon Decl. ¶ 4, ECF No. 5-2; *see also* Compl. ¶ 9 (alleging plaintiff terminated on or about June 28, 2018). During the termination process, the parties

entered into a Separation Agreement and Release ("separation agreement"), governing, among other matters, the terms of Lyon's exit from the company. Compl. ¶ 9. The separate agreement contains the following provisions relevant here:

> 1. <u>Consideration</u>.
>
> . . .
>
> b. *Continued Employment; Transition Period*. The company agrees to continue to employ Executive from June 14, 2018 until no later than the Termination Date ( the "Transition Period"). . . . During the Transition Period, Executive will continue to receive his full salary and any employee benefits that the applicable employee benefit plans allow him to continue to receive through the Termination Date.
>
> 25. <u>Entire Agreement</u>. This Agreement represents the entire agreement and understanding between the Company and Executive concerning the subject matter of this Agreement and Executive's employment with and separation from the Company and the events leading thereto and associated therewith, and supersedes and replaces any and all prior agreements and understandings concerning the subject matter of this Agreement and Executive's relationship with the Company, with exception of the Confidentiality Agreement and the Management Equity Agreement (with the exception of Section 6), except as otherwise expressly modified or superseded herein.
>
> …
>
> 27. <u>Governing Law; Venue</u>. This Agreement shall be governed by the laws of the State of Virginia, without regard for choice-of-law provisions. Notwithstanding any prior agreements between the Parties as to personal jurisdiction or venue, the Parties agree that any dispute relating to or arising from this Agreement, its scope, or Executive's employment relationship with the Company, shall be resolved exclusively in the state or federal courts of the State of Virginia. Executive consents to personal and exclusive jurisdiction in such Virginia courts.

*Id.*; Separation Agreement ¶¶ 1, 25, 27, ECF No. 5-6, Ex. C. The separation agreement also contains an arbitration agreement providing, in pertinent part:

> 19. <u>ARBITRATION</u>. THE PARTIES AGREE THAT ANY AND ALL DISPUTES ARISING OUT OF THE TERMS OF THIS AGREEMENT . . . SHALL BE SUBJECT TO ARBITRATION UNDER THE FEDERAL ARBITRATION ACT. . . . ANY ARBITRATION WILL OCCUR IN LOUDOUN COUNTY [ . . . ]

Compl. ¶ 9; Separation Agreement ¶ 19. With his initial filings, plaintiff contended he was not represented by counsel at any point during the negotiation or execution of the separation agreement. Compl. ¶ 10; Lyon Decl. ¶ 4; Reply at 5–7. At hearing on the preliminary injunction,

plaintiff testified and repeated his position that he was not previously represented by counsel, either upon signing the original employment agreement or in connection with negotiation of the separation agreement. April 16 Hr'g Tr. at 10:10–11:5, 18:15–19:21, ECF No. 27. Rather, to the extent he referenced his attorneys in email communications with Neustar representatives, plaintiff testified he was merely "posturing." *Id.* at 10:16–20, 18:23–19:2, 37:12–38:14, 49:10–15. At the conclusion of the hearing, during which Neustar's counsel engaged in extensive cross-examination, the court found plaintiff's testimony that he was not represented by counsel to be credible. *Id.* at 64:8–9.

After his separation from Neustar, Lyon, along with another former Neustar employee, launched Netography, Inc., "an autonomous network security platform that aims to help security and network teams leverage real-time data produced by network devices to automatically detect and block malicious traffic." Compl. ¶ 11. Soon after Netography's launch, Neustar sent a letter to Lyon claiming he had breached the non-solicitation and non-competition provisions of section 15 of the employment agreement, as modified by the separation agreement. Compl. ¶ 12; TRO Mot. at 2; Demand Letter, ECF No. 5-4, Ex. A. On March 2, 2019, having reviewed Neustar's letter, Lyon filed suit in this court seeking, among other things, declaratory relief that the forum selection and choice of law provisions in the separation agreement are invalid under California law, particularly under California Labor Code section 925. TRO Mot. at 2. On March 6, 2019, Neustar filed a petition to compel arbitration in the Eastern District of Virginia. *Id.*; Arb. Pet., ECF No. 5-8, Ex. E. On March 10, 2019, seeking to enjoin Neustar's arbitration action, Lyon moved for a temporary restraining order. TRO Mot.

On March 12, 2019, the court heard telephonic argument on Lyon's motion for temporary restraining order. March 12 Hr'g Tr., ECF No. 17. The following day, March 13, 2019, the court held a second hearing on the matter and, delivering its ruling from the bench, granted Lyon's motion. March 13 Hr'g Tr., ECF No. 18. By written order issued March 13, 2019, the court affirmed its ruling and set the matter for the show cause hearing as to why a preliminary injunction should not issue. *See generally* TRO.

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right[,]" *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), and "should not be granted unless the movant, by a clear showing, carries the burden of persuasion[,]" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original)). In determining whether to issue a preliminary injunction, federal courts must consider whether the moving party "[1] is likely to succeed on the merits, . . . [2] is likely to suffer irreparable harm in the absence of preliminary relief, . . . [3] the balance of equities tips in [the movant's] favor, and . . . [4] an injunction is in the public interest." *Id.* at 20.

The Ninth Circuit has "also articulated an alternate formulation of the *Winter* test." *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012). That formulation is referred to as the "serious questions" or the "sliding scale" approach: "'serious questions' going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("the 'serious questions' approach survives *Winter* when applied as part of the four-element *Winter* test," *id.* at 1132). "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132. Under the "serious questions" approach to a preliminary injunction, "[t]he elements of the preliminary injunction test must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.

Moreover, in each case and irrespective of the approach to a preliminary injunction, a court must balance the competing alleged harms while considering the effects on the parties of the granting or withholding of the injunctive relief. *Winter*, 555 U.S. at 24. In exercising that discretion, a court must also consider the public consequences of the extraordinary remedy. *Id.*

III. DISCUSSION

In granting Lyon's motion for TRO, the court found Lyon met his burden of satisfying each of the factors applicable at the TRO stage. *See generally* TRO; March 13 Hr'g Tr. The factors applicable in determining whether a TRO should issue are essentially identical to those considered in determining whether a preliminary injunction should be entered. *Cf. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) ("analysis is substantially identical for the injunction and the TRO"). Here, the court applies those factors in light of the more developed record established through the parties' briefing and the evidence presented at the injunction hearing. After careful consideration, the court finds plaintiff has satisfied his burden under both the *Winter* and "sliding scale" test and that entry of a preliminary injunction is supported by the record.

A. Likelihood of Success on the Merits

"Likelihood of success on the merits is 'the most important' factor; if a movant fails to meet this 'threshold inquiry,' [a court] need not consider the other factors. *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (citing *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 869 (9th Cir. 2017)).

Because California Labor Code section 925 is the crux of this dispute, the court sets forth its provisions as relevant here:

> (a) An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:
>
> (1) Require the employee to adjudicate outside of California a claim arising in California.
>
> (2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.
>
> (b) Any provision of a contract that violates subdivision (a) is voidable by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute.
>
> . . .
>
> (e) This section shall not apply to a contract with an employee who is in fact individually represented by legal counsel in negotiating the

7

> terms of an agreement to designate either the venue or forum in which a controversy arising from the employment contract may be adjudicated or the choice of law to be applied.
>
> (f) This section shall apply to a contract entered into, modified, or extended on or after January 1, 2017.

Cal. Lab. Code § 925.

Plaintiff Lyon contends the court previously, in entering the TRO, correctly read section 925(f) as applicable to the employment agreement, because that agreement was modified by the separation agreement after January 1, 2017. Therefore, the employment agreement as modified violates subsection (a), because the agreement makes the amended forum-selection clause a condition of employment; the agreement is thus voidable under section 925(b). Reply at 2; *see also* March 13 Hr'g Tr. at 6:8–15. In its reply brief, Lyon further argues that subsection (e) does not apply because, as the court previously found, Lyon's reference to "my lawyers" in an email to Neustar during negotiation of the agreement does not meet the statutory requirement of legal representation "in fact" for the exemption to kick in. Reply at 5–7. Finally, Lyon argues the court need not reach the arbitration question, but rather, as it did in issuing the TRO, may limit its decision to the issue of forum-selection. *Id.* at 9 (citing March 13 Hr'g Tr. at 7:10–14 ("In terms of the federal policy favoring arbitration, I would just note that my order is not in any way undercutting that policy. Arbitration is not necessarily precluded by this ruling. It could be a function of next steps in the litigation here.")). In his concluding statements at the preliminary injunction hearing, Lyon's counsel reiterated these arguments and highlighted Lyon's position that Neustar has failed to show how the preliminary injunction factors tip in its favor. April 16 Hr'g Tr. at 64:23–69:19, 85:12–92:12.

In its brief, Neustar first argues Lyon's reliance on and the court's reference to California Business and Professions Code section 16600 in granting the TRO[1] was misplaced, because finding a venue provision void as a matter of public policy is only permissible where the

---

[1] "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600.

8

policy is related to venue itself, and because section 16600 is unrelated to venue, it is inapplicable here. Resp. at 5–6. Neustar further contends Lyon is attempting to align the policy of section 16600 with the contract's venue provision by conflating choice-of-law and venue analyses. *Id.* at 6. Neustar also renewed its arguments that section 925 is inapplicable because Lyon was represented by counsel and, in any event, Lyon has not satisfied the "required" and "condition" elements of section 925(a). *Id.* at 7–19. During closing statements at the preliminary injunction hearing, Neustar's counsel further summarized these arguments, placing substantial emphasis on the federal policy of enforcing contractual forum selection clauses. April 16 Hr'g Tr. at 69:23–85:7, 93:4–94:6.

The court finds Neustar's arguments unavailing, and for essentially the same reasons articulated upon granting the TRO, grants the preliminary injunction Lyon requests. First, to clarify, to the extent Neustar focuses on Business and Professions Code section 16600 to undermine Lyon's showing of a "likelihood of success," Neustar does not acknowledge the narrow ground on which the court's TRO ruling fundamentally stood. In explaining its ruling from the bench at that juncture, the court methodically walked through the provisions of section 925, and, in doing so, explained:

> I do find that plaintiff has met his burden as to whether he is likely to succeed specifically with respect to whether or not the dispute must be litigated, the parties' dispute must be litigated in California. As I signaled yesterday, I was considering that narrow ground. And having thought carefully about it after the hearing, I'm prepared to grant the TRO to that extent.

March 13 Hr'g Tr. 3:22–4:4. The court went on to find the forum-selection clause voided "by operation of the statute"—meaning section 925—alone, without considering whether the venue provision was invalid under section 16600 in the context of the "likelihood of success" discussion.[2] *Id.* at 6:8–12.

---

[2] Although the court made a reference to "other provisions of California law which has a strong public policy protecting him or providing him with certain rights," that reference was within the context of the "irreparable harm" factor. March 13 Hr'g Tr. at 6:16–23. Still, it was section 925 that formed the primary basis for the court's decision under this factor as well: "His

9

Regarding the question of whether Lyon was represented by counsel when he negotiated the employment agreement and the separation agreement,[3] the record established at the preliminary injunction hearing has only improved for Lyon. In its brief, Neustar continues to rely on an email exchanged during negotiations of the separation agreement in which Lyon said, "in the spirit of the agreement I asked my lawyers to keep the suggestions to a minimum." Resp. at 7; *see also* Pellock Decl. ¶ 8, ECF No. 23-9, Ex. F ("Mr. Lyon advised Neustar that based on advice from his attorneys ('*My lawyers have a small issue with a couple areas on the proprietary information agreement*'), he insisted that the Confidentiality Agreement be modified . . . ." (emphasis in original)). But as noted, at the preliminary injunction hearing, Lyon testified credibly that any reference to "my lawyers" during discussion of the separation agreement was merely a form of negotiation posturing. April 16 Hr'g Tr. at 10:16–20, 18:23–19:2, 37:12–38:14, 49:10–15. Lyon's testimony is consistent with his sworn declaration filed in support of his motion for a TRO in which he declared, "I did not consult with an attorney at any point during the discussions of the Separation Agreement." Lyon Decl. ¶ 4. During his testimony, Lyon further stated that he was not represented by counsel during negotiation of the original employment agreement. April 16 Hr'g Tr. at 10:10–20. After the court advised the parties' counsel that it found Lyon's testimony credible, Neustar's counsel did not object or request reconsideration. On the totality of the record at this stage, the court finds Lyon was not "in fact" represented by counsel for the purposes of section 925(e); thus, section 925(e)'s "legal counsel" exception is inapplicable.

Regarding whether the contract here otherwise is governed by section 925, given the timing of the original agreement, the enactment of section 925, and then execution of the separation agreement, Neustar is of course correct that the plain meaning of a statute's text

---

rights under California law—he has invoked them in full—would be frustrated under 925 at least." *Id.* at 6:19–21.

[3] While the parties focus on whether Lyon was represented during negotiation of the separation agreement, which modified the employment agreement, the court addresses both negotiations to the extent both may be relevant.

10

controls, if the meaning is plain, and every statute should be read to avoid rendering any provisions superfluous. Resp. at 10 (citing *Hughes v. Bd. of Architectural Exam'rs*, 17 Cal. 4th 763, 775 (1998)); *cf. Ryze Claim Sols. LLC v. Superior Court of Contra Costa Cty.*, No. A155842, 2019 WL 1467947, at *3 (Cal. Ct. App. Apr. 3, 2019) (alteration in original) (citations omitted) (reversing trial court's decision to apply section 925(f) to contract neither entered into, modified, or extended on or after January 1, 2017). However, in so arguing, Neustar fails to provide any meaningful discussion or construction of section 925(f), which provides that any contract "entered into, modified, or extended on or after January 1, 2017" is within the statute's scope. Cal. Lab. Code § 925(f).

As the court previously explained, section 925(f) is clear on its face and the "relevant contract is the original employment agreement as modified." March 13 Hr'g Tr. 5:7–8. Even though the parties' employment agreement was executed prior to January 1, 2017, the separation agreement was executed in June of 2018. Separation Agreement at 12. Section 22 of the employment agreement, as originally agreed to by the parties, designates California as the forum where disputes are to be resolved, Emp't Agreement ¶ 22, yet section 27 of the separation agreement provides that "Notwithstanding any prior agreements between the Parties . . . any dispute relating to or arising from this Agreement . . . shall be resolved exclusively in the state or federal courts of the State of Virginia," Separation Agreement ¶ 27. Because the forum-selection provision of the separation agreement directly modified the forum-selection provision of the employment agreement, and the modification occurred after January 1, 2017, the original employment agreement as modified is covered by section 925.

Finally, the court finds Neustar's argument that Lyon has not satisfied section 925(a)'s "required" and "condition" elements also is without merit. Resp. at 8–19. Section 925(a) provides that an "employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following: (1) Require the employee to adjudicate outside of California a claim arising in California." Cal. Lab. Code § 925(a), (1). As the court previously explained, in granting the TRO, one need look no further than the preamble to the employment agreement to see that the

11

forum-selection clause was both a requirement and a condition of Lyon's employment with Neustar. March 13 Hr'g Tr. at 5:24–6:5. The preamble states: "I am expressly being given employment, continued employment, . . . and confidential information of Neustar . . . to which I would not have access but for my relationship with Neustar in exchange for my agreeing to the terms of this Agreement." Employment Agreement at 1. This language alone makes clear all terms of the agreement, including the forum-selection clause, are required conditions of employment. And Neustar considered those terms to continue in force following Lyon's termination. Indeed, Neustar sought to enforce the employment agreement in full by seeking to compel arbitration in the Eastern District of Virginia. *See* Arb. Pet. ¶¶ 1, 17 ("Lyon was obligated to comply with the terms of the [Employment] Agreement."; "Section 25 of the Separation Agreement provides that Section 15 of the [Employment] Agreement survives and is not superseded by the Separation Agreement and . . . Respondent reaffirmed and agreed to observe and abide by the terms of the [Employment] Agreement.").

Lyon has met his burden of showing a likelihood of success on the merits because the employment agreement, as modified by the separation agreement to include a forum-selection provision requiring resolution of all disputes in Virginia, runs afoul of section 925(a)(1)'s provision that an employer not "[r]equire the employee to adjudicate outside of California a claim arising in California."

B. <u>Likelihood of Irreparable Harm</u>

A movant also must show that absent a preliminary injunction he is likely to suffer irreparable harm; even a showing of possible harm is "too lenient." *Winter*, 555 U.S. at 22. In issuing the TRO, the court found "Mr. Lyon would suffer irreparable harm if subjected to litigation or arbitration in Virginia. His rights under California law—he has invoked them in full—would be frustrated under 925 at least." March 13 Hr'g Tr. at 6: 17–21. Factually, Lyon has provided evidentiary support for his position that he would be harmed personally and economically as well. *See also* Lyon Decl. ¶¶ 8–10 ("I have dedicated a considerable amount of my time and resources to the business, and any harm to the business therefore harms me personally"; "The aforementioned expenditures, time commitments, and risks are immediate, and

1  require swift resolution."). He also notes the particularized harm he will suffer at this time if
2  required to spend time away from his new business, which is at a critical stage of development.
3  *Id.* ¶ 9 ("This period in Netography's existence is a particularly sensitive one, as we are seeking
4  to establish ourselves within a competitive field, as well as to gain funding to help grow the
5  business."). Lyon further testified to the extent of this harm at the preliminary injunction hearing.
6  April 16 Hr'g Tr. at 23:23–24:12.
7         As Lyon notes, Neustar's brief contained no argument to the contrary. *See*
8  *generally* Resp.; Reply at 8 ("Neustar's Response presents no evidence on this issue, and indeed
9  fails to address the irreparable injury factor *whatsoever*." (emphasis in original)). At the
10 preliminary injunction hearing, however, Neustar's counsel briefly questioned Lyon regarding his
11 financial position after his separation from Neustar, and noted that even if Lyon were required to
12 litigate in Virginia the parties would likely stipulate to deposing Lyon in California. April 16
13 Hr'g Tr. at 28:7–16, 94:1–6.
14        On the record before the court, given the infancy of Lyon's new business venture
15 and the critical role he plays as its CEO, April 16 Hr'g Tr. at 5:12, the court finds Lyon has made
16 a sufficient showing that he will suffer irreparable harm by having to litigate this matter in
17 Virginia absent preliminary relief; therefore, there is no reason for the court to deviate from its
18 previous finding on this factor.
19     C.    <u>The Balance of Equities and Public Interest</u>
20        In its TRO ruling from the bench, the court explained its balancing as follows: "In
21 terms of the balance of equities, I do find that California's strong interest in protecting its
22 employees in certain respects is an equitable consideration that weighs in Mr. Lyon's favor."
23 March 13 Hr'g Tr. at 7:6–9. The court also addressed briefly the competing public interests
24 potentially at stake, namely the federal policy favoring arbitration and the policy of holding
25 parties to the terms of contracts to which they knowingly and intelligibly agree. The court found
26 those interests were not undercut by a narrow ruling based on section 925(a)(1)'s forum-selection
27 limitation, which ruling did not preclude future arbitration of the parties' dispute. *Id.* at 7:10–20.
28

Given Mr. Lyon's lack of counsel, the court also found that the interest in freedom of contract was not undercut. March 13 Hr'g Tr. at 7:15–20.

Lyon argues in its briefing that Neustar offers "no argument or evidence in response to the Court's Order to Show Cause that would warrant altering the Court's finding on this [balance of equities] factor at the TRO stage." Reply at 8. Lyon further contends Neustar's public interest arguments are misguided because they rely on considerations beyond the scope of the court's TRO ruling and constructions of Business & Professions Code section 16600 that predate the enactment of section 925. Reply at 9. Although Neustar makes a passing reference to the balance of equities in the conclusion of its brief, *see* Resp. at 20 ("the balance of equities does not tip in Lyon's favor"), the bulk of its briefing focuses on the inapplicability of section 16600, Resp. at 5–7. At closing argument during the injunction hearing, however, Neustar's counsel did stress the public policy of enforcing forum agreements. *See, e.g.*, April 16 Hr'g Tr. at 93:10–15.

As with the likelihood of irreparable harm, Neustar has made no showing that alters the court's prior finding that the balance of equities tips in Lyon's favor. Because the court does not rest its decision here on section 16600, Neustar's arguments regarding that section are unavailing. Rather, as explained above, the court rests its decision on section 925 alone. As a sister court has observed, "In Section 925, California expresses a strong public policy to protect employees from litigating labor disputes outside of their home state." *Karl v. Zimmer Biomet Holdings, Inc.*, No. C 18-04176 WHA, 2018 WL 5809428, at *2 (N.D. Cal. Nov. 6, 2018). This court reads the statute in the same manner, meaning that any contract provision that runs afoul of section 925 is contrary to California's strong public interest in protecting its employees. On that ground alone, the public policy interests relevant here weigh in support of preliminarily enjoining Neustar's pursuit of arbitration outside of California.

D. <u>Alternative Sliding Scale Approach</u>

As explained above, the Ninth's Circuit's "sliding scale" approach is a variation of the Supreme Court's *Winter* analysis. *Farris*, 677 F.3d at 864. Under this approach, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a

14

likelihood of irreparable injury and that the injunction is in the public interest." *Cottrell*, 632 F.3d at 1135. Given the court's findings that Lyon has satisfied each of the factors supporting issuance of a preliminary injunction under *Winter*, these findings also satisfy the Ninth Circuit's sliding scale approach.

In sum, the court finds that Lyon has met his burden of establishing he is likely to succeed on the merits of his claim, he is likely to suffer irreparable harm absent preliminary relief, the balance of equities tips in his favor and enjoining Neustar's pursuit of arbitration elsewhere serves the relevant public policy interests.

### E. Arbitration Issues

Given the narrow forum-related grounds on which the court basis its decision here, it does not reach the policy questions related to the validity of the arbitration clause contained in the employment and separation agreements. Neustar's arguments in that regard are moot. *See* Resp. at 19.

### F. Imposition of a Bond

Neustar did not request a bond at the TRO stage, nor does it here. March 12 Hr'g Tr. at 28:11–12 ("Your Honor, I don't have much to say on the bond."); *see generally* Resp. (not addressing the issuance of a bond). Therefore, as at the TRO stage, the court finds that imposition of a bond is not warranted. *See Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("Rule 65(c) invests the district court 'with discretion as to the amount of security required, *if any*.'") (emphasis in original) (quoting *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)).

/////
/////
/////
/////
/////
/////
/////

## IV. CONCLUSION

Plaintiff Lyon has satisfied his burden of showing that each of the factors supporting the issuance of a preliminary injunction weigh in his favor. Therefore, defendant Neustar is preliminarily enjoined from:

1. Taking any action, making any requests or appearances, or seeking in any way to continue to litigate its petition and arbitration, save and except for requesting dismissal or stay of those actions.
2. Filing any new petitions to compel arbitration in any jurisdiction under the auspices of any non-competition and non-solicitation provisions.
3. Pursuing any litigation or arbitration outside of the State of California against plaintiff relating to either the 2016 employment agreement or the 2018 separation agreement.

IT IS SO ORDERED.

DATED: May 3, 2019.

_____
UNITED STATES DISTRICT JUDGE